UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------

JANE JONES 1, *et. al.*, on behalf of themselves and all others similarly situated,

                Plaintiffs,

  - against-

DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS") ACTING COMMISSIONER ANTHONY ANNUCCI, *et. al.*,

                Defendants.
---------------------------------------------------------------

16 CV 1473 (RA)

**SETTLEMENT STIPULATION; STAY; AND CONDITIONAL ORDER OF DISMISSAL**

This Settlement Stipulation and Conditional Order of Dismissal (the "Stipulation") is made by and between Jane Jones 1, Jane Jones 2, Jane Jones 3, Jane Jones 4, and Jane Jones 6, who are proceeding anonymously in this action pursuant to the Court's Order dated February 25, 2016 (ECF No. 4) ("Plaintiffs") and Defendants Acting Commissioner Anthony Annucci, Chief of Investigations for the Office of Special Investigations ("OSI") Steven Maher, Deputy Chief of Investigations for the Sex Crimes Unit of the OSI Christian Nunez, Director of the Bureau of Labor Relations John Shipley, and Associate Commissioner of the Office of Sexual Abuse Prevention and Education Jason Effman, all officials of the New York State Department of Corrections and Community Supervision ("DOCCS") sued in their official capacities (collectively "Defendants") as of February 25, 2016.

WHEREAS, Plaintiffs commenced this action by filing a complaint on or about February 26, 2016, in this Court, Case Number 16 Civ. 1473, against Defendants in their official capacities in the above-captioned action (the "Action"), alleging that Defendants' policies and procedures concerning the prevention and investigation of sexual abuse of female prisoners by male staff violated Plaintiffs' right to be free from cruel and unusual punishment under the Eighth Amendment; and

WHEREAS, Defendants expressly deny any wrongful conduct or liability, or violation of

any federal, state, or local Constitution, Statute, ordinance or law in this matter whatsoever; and

WHEREAS, Plaintiffs and Defendants now wish to fully resolve the claims alleged in the complaint in the Action, and any and all other disputes related to the claims alleged in the Action, without further litigation or proceedings and without admission of fault or liability, and have negotiated in good faith for that purpose; and,

WHEREAS, neither any of the Plaintiffs nor any of the Defendants is an infant or incompetent person; and

WHEREAS, Plaintiffs represent and warrant that, other than this Action, they have no action or proceeding pending in any court, state or federal, seeking injunctive or declaratory relief arising out of or relating to the subject matter of this lawsuit.

NOW THEREFORE, in consideration of the mutual promises, covenants, representations, and other consideration contained in this Stipulation and the attached Settlement Agreement (the "Settlement Agreement"), Plaintiffs and Defendants (collectively the "Parties"), subject to approval of the Court, hereby agree as follows:

1. The stay of this Action ordered on June 13, 2017 (ECF No. 52) (the "Stay") and extended until April 16, 2020 (ECF No. 78), will be immediately extended until the date of the lifting of the State disaster emergency in New York State relating to the COVID-19 pandemic declared by Governor Cuomo pursuant to Executive Order 202 ("COVID-19 Disaster Emergency"), which is currently set to expire on September 7, 2020 but is subject to early termination or further extension.

2. Upon the termination of the COVID-19 Disaster Emergency, a nine-month "Monitored Stay" period shall commence.

3. Notwithstanding the terms of paragraphs 1 and 2, the parties may stipulate to commence the nine-month Monitored Stay period at an earlier or later date of their choosing. Any such stipulation should be filed promptly after its execution.

4. During the nine-month period of the Monitored Stay, Plaintiffs may move the Court for an order lifting the Monitored Stay and returning the Action to the Court's active calendar. However, such a motion may only be granted if Plaintiffs can demonstrate the existence of "good cause", in which case the Action shall be reinstated. "Good cause" shall consist of clear and convincing evidence showing that DOCCS has failed to make reasonable efforts to comply with the material terms of the Parties' Settlement Agreement, attached hereto as Exhibit A.

5. The Parties recognize that the policies and procedures concerning prevention and investigation of sexual abuse of female inmates that have been and are being implemented by DOCCS, some but not all of which are set forth in the Settlement Agreement, are intended to encourage increased reporting of incidents of sexual abuse, more effective investigations and, where appropriate, criminal prosecutions of alleged offenders. Thus, it is expressly understood and agreed that evidence that there has been an increase in the number of reported incidents of sexual abuse, or that there has been an increase in the number of substantiated allegations, criminal prosecutions, referrals for possible criminal prosecutions, and/or referrals for disciplinary proceedings related to such reports, shall not, without more, constitute evidence that Defendants are failing to make reasonable efforts to comply with the material terms of the Settlement Agreement.

6. During the nine-month period of the Monitored Stay, Plaintiffs' sole and exclusive remedy and recourse to enforce the Settlement Agreement or for actions or inactions that Plaintiffs perceive not to be in conformity with the provisions of the attached Settlement Agreement, including a material breach of any provisions therein regarding production of

documents or other disclosures of information to Plaintiffs' counsel, shall be the motion to lift the Monitored Stay and reinstate the Action upon a showing of Good Cause described in paragraph 2. It is agreed and understood by the Parties that the terms of the attached Settlement Agreement shall not otherwise be subject to Court enforcement, through contempt or otherwise, during the Stay period or the nine-month period of the Monitored Stay.

7. This Stipulation and Order represents a waiver and release solely of claims for injunctive or declaratory relief for matters relating to the subject matter of this action. For the avoidance of doubt, nothing in this Stipulation and Order is intended to release or does release any individual claims for monetary damages that the Plaintiffs may seek to assert. Additionally, nothing in this Stipulation and Order limits or precludes a Plaintiff from seeking injunctive relief if she is at imminent risk of physical harm related to DOCCS failure to protect her from harm during Stay or the 9-month period of the Monitored Stay.

8. If Plaintiffs do not move to lift the Monitored Stay pursuant to the terms set forth in paragraph 4, during the nine-month period of the Monitored Stay, the Action shall automatically be dismissed with prejudice, and without costs or fees to any party, on the date that the nine-month Monitored Stay period expires. If Plaintiffs move to lift the Monitored Stay during the nine-month period and that motion is denied, the Action shall automatically be dismissed with prejudice, and without costs or fees to any party, on the date Plaintiffs' motion is denied.

9. It is agreed and understood by the Parties that, upon dismissal of the Action pursuant to paragraph 8, the Court shall not retain any jurisdiction it may have had to enforce the terms of the Settlement Agreement.

10. Neither Plaintiffs nor Defendants shall be deemed a "prevailing party" for any purpose including, but not limited to, any statutory or contractual claim based upon "prevailing

party" status with respect to the Action. The terms and conditions of this Stipulation shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto. Each signatory to this Stipulation hereby represents and warrants that he, she, or it has the requisite authority to enter into this Stipulation and has not previously assigned or transferred any rights or interests with respect to the matters covered by this Stipulation. The parties hereto execute and deliver this Stipulation voluntarily after being fully informed of its terms, contents, and effect, and acknowledge that they understand its terms, contents, and effect. The parties hereto acknowledge that they are aware, and are advised, of their right to seek the advice of an attorney before agreeing to any settlement or release, and no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party hereto or anyone acting on behalf of such party.

11. It is understood and agreed that the agreements set forth in this Stipulation and the attached Settlement Agreement are based upon Defendants' agreement that they will comply with the terms of the Settlement Agreement concerning the prevention and investigation of sexual abuse and Defendants' desire to avoid the burdens and expense of protracted litigation, and that this Stipulation and the attached Settlement Agreement, and the actions pursuant thereto, are not to be construed as constituting an admission of liability or wrongdoing, or any determination on the merits of any claims, whether asserted or purportedly asserted in the Action. Nothing contained in this Stipulation or attached Settlement Agreement shall be deemed to constitute a policy, practice, or custom of DOCCS, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), or any of their officials, employees, or agents, whether in their individual or official capacities, except where expressly stated otherwise.

12. This Stipulation shall not in any manner be construed as determinative of the issues or claims, whether raised or purportedly raised, in the Action or any other proceeding, and shall have no precedential value. In addition, notwithstanding the provisions of any paragraph herein, this Stipulation shall not bind or collaterally estop Defendants, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), or any of their officials, employees, or agents, whether in their individual or official capacities, in any pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues raised in said actions or proceedings, or from advancing any and all available defenses.

13. This Stipulation and attached Settlement Agreement, along with the terms of the Stay during the period of the Stay, together constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and supersede, embody, merge, and integrate all prior and current agreements and understandings of the parties hereto, whether written or oral, with respect to the subject matter of this agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the parties hereto or an authorized representative of the parties hereto. This Stipulation may be executed in any number of counterparts, all of which taken together shall constitute one Stipulation, and may be executed by facsimile signature and facsimile notary seal.

[CONTINUED ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto acknowledge that they have read this Stipulation and accept and agree to the provisions contained herein, and have each executed this Stipulation to be effective on the day and date indicated below.

Dated: New York, New York
April 14, 2020

| | |
|---|---|
| **Debevoise & Plimpton LLP** <br> **The Legal Aid Society** <br> **Prisoner's Rights Project** <br> *Attorneys for Plaintiffs* <br><br> By: _/s/ Maeve L. O'Connor_ <br>   Maeve L. O'Connor <br>   Kathryn C. Saba <br>   Debevoise & Plimpton LLP <br>   919 Third Avenue <br>   New York, NY 10022 <br>   (212) 909-6950 <br><br>   Dori A. Lewis <br>   Veronica Vela <br>   The Legal Aid Society <br>   Prisoners' Rights Project <br>   199 Water Street <br>   New York, NY 10038 <br>   (212) 577-3530 | **Letitia James** <br> **Attorney General** <br> **State of New York** <br> *Attorney for Defendants* <br><br> By: _/s/ Daniel Schulze_ <br>   Daniel A. Schulze <br>   Colleen K. Faherty <br>   Julinda Dawkins <br>   28 Liberty Street <br>   New York, NY 10005 <br>   (212) 416-6557 |

SO ORDERED.

_____
Dated: 4-15-20

# EXHIBIT A

# SETTLEMENT AGREEMENT

Pursuant to the terms set forth in the foregoing Stipulation and Order between Plaintiffs and Defendants (together, the "Parties"), dated April 14, 2020, filed in the case <u>Jones v. Annucci</u>, SDNY, 16 CV 1473 (RA)(AJP) (the "Stipulation"), the undersigned, attorneys of record for the Parties in the above-titled action (the "Action"), have agreed, subject to Court approval, to stay the Action **in contemplation of dismissal of the claims asserted in the Action, with a nine-month Monitored Stay period that will commence at the time set in paragraphs 2 and 3 of the Stipulation. The Parties further enter into the following Settlement Agreement (the "Settlement Agreement"), the terms of which shall not be So Ordered by the Court but shall be in effect for a term of eighteen months commencing on the date of the Monitored Stay period (the "Effective Date"):**

**A.   NATIONAL STANDARDS**

The New York State Department of Corrections and Community Supervision (the "Department" or "DOCCS") will continue with its ongoing efforts to comply with the requirements of the Prison Rape Elimination Act ("PREA") and the National Standards for the Detection, Prevention, Reduction, and Punishment of Prison Rape (the "Standards"), 28 C.F.R. Part 115 (2012), at Bedford Hills, Taconic, and Albion Correctional Facilities (together, the "Women's Facilities").

The term "sexual abuse" shall have the same meaning in this Agreement as it does in the Standards.

**B.   DOCCS' WRITTEN POLICIES**

DOCCS will continue to make reasonable efforts to ensure that its goals described herein will be reflected in relevant policies, procedure manuals, directives, and other Departmental guidance materials. DOCCS will continue to make reasonable efforts to apprise counsel for Plaintiffs of any new policies promulgated in furtherance of the goals set forth herein or material changes to existing policies.

**C.   SUPERVISION**

1. DOCCS shall continue its efforts to effectuate Directive 4001 in conformance with Central Office guidance, such as that provided in the March, 2016 Deputy Commissioner's memorandum regarding Tour 1 supervisory rounds. As part of these efforts, DOCCS will make reasonable efforts to ensure that rounds are generally conducted at varied and unpredictable times.

2. The Assistant Deputy Superintendent/PREA Compliance Manager for each of the Women's Facilities should also make rounds as frequently as practicable, speak to staff

    and inmates during these rounds, and have conversations with inmates in private where warranted.

3. DOCCS executive and supervisory staff at the Women's Facilities should take appropriate measures to ensure the integrity and effectiveness of such rounds, including enforcement of Directive 4001 and the DOCCS employee manual. Such measures should include examinations of video footage and reviews of internal telephone logs.

4. DOCCS will continue its efforts to determine how best to monitor and supervise areas for the Women's Facilities where video coverage is limited or absent.

D. **CAMERAS AND VIDEO SURVEILLANCE**

1. DOCCS will seek to install and maintain video surveillance systems in each of the Women's Facilities where technically feasible, with cameras and microphones located to cover areas that DOCCS deems appropriate. DOCCS will endeavor to preserve recordings for ninety (90) days at Bedford Hill Correctional Facility and Taconic Correctional Facility and thirty (30) days at Albion Correctional Facility. DOCCS will continue to seek to preserve recordings extracted in connection with investigations into complaints of misconduct. Cameras and microphones should have the capacity to make digital recordings, and should have the capacity for real-time monitoring in designated areas of the facility as determined by DOCCS.

2. In response to serious and credible complaints DOCCS will, when practicable, install additional cameras in additional locations for specific monitoring of particular areas and staff/inmates therein.

3. For any areas within the women's facilities that do not have fixed cameras, DOCCS shall make reasonable efforts to limit unauthorized access by staff, and maintain or promulgate a policy such that any time an incarcerated woman and a staff member are off of a fixed camera, body cameras should be turned on.

4. Staff found failing to abide by the body camera policies shall be subject to counseling or formal discipline.

5. DOCCS shall continue its efforts to obtain funding to obtain equipment with which to increase video coverage, to the extent practicable, within the Women's Facilities.

E. **INVESTIGATIONS OF SEXUAL ABUSE**

1. DOCCS will continue to exert efforts to investigate allegations of sexual abuse promptly, thoroughly, and objectively. Such investigations will consider both alleged wrongdoers and the potential misconduct of other staff who knew, or should have known, about the sexual abuse.

2. During the pendency of an investigation, if DOCCS has reasonable cause to believe that a staff member has engaged in sexual abuse, DOCCS will seek to remove the alleged abuser from the workplace. If DOCCS is unable to remove the alleged abuser from the workplace, DOCCS will consider whether and how the inmate's contacts with the alleged abuser can be minimized. If at the conclusion of the investigation DOCCS concludes that the charge of sexual abuse has been substantiated, DOCCS will seek to remove the alleged abuser from employment.

3. Absent exigent circumstances DOCCS will seek to ensure that all interviews of purported victims of sexual abuse shall be conducted by trained investigative staff.

4. Upon a complaint of sexual abuse DOCCS will seek to promptly preserve and examine all documentary and forensic evidence including, but not limited to, pertinent video footage.

5. DOCCS will continue to develop and implement other appropriate investigative tools including, but not limited to, covert surveillance techniques.

6. DOCCS will continue to implement means with which to obtain recorded interview statements obtained in confidential settings from alleged victims, alleged wrongdoers, staff witnesses and inmate witnesses, as practicable.

7. The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation.

8. Where the preponderance of the evidence available to the Office of special Investigations ("OSI") shows that the wrongdoer committed the alleged act, the charge against that wrongdoer may be substantiated in the absence of any DNA or video evidence.

9. Investigators should gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data; interview alleged victims, suspected perpetrators, and witnesses; and review prior complaints and reports of sexual abuse involving the suspected perpetrator. To the extent practicable, women who previously complained about the suspected perpetrator should be interviewed. Allegations of similar patterns of abuse by more than one alleged victim should be considered in determining whether to substantiate an allegation of sexual abuse.

10. Best efforts shall be made to commence all investigations of alleged sexual abuse expeditiously after a claim is made.

11. If fixed or body camera footage is not available during an investigation of sexual abuse, when it otherwise should be available, OSI shall direct an inquiry into the missing footage.

12. During OSI investigations of sexual abuse by staff, when OSI suspects that an employee alerted another employee that supervisory rounds were occurring, OSI will investigate that matter. Unless such alert was related to the legitimate operational functions of the facility, that matter shall be subject to counseling or formal discipline.

13. During OSI investigations of sexual abuse by staff, when OSI suspects that an employee had knowledge of or reason to believe that staff was engaging in sexual abuse and failed to report it, OSI shall conduct an inquiry and, if substantiated, that employee shall be subject to counseling or formal discipline.

14. When OSI investigates an allegation of sexual abuse by staff, it shall review its case tracking system for any prior allegations involving sexual abuse by or against the directly involved parties. Allegations of similar patterns of abuse by more than one alleged victim and/or repeated similar allegations shall be considered in determining whether to substantiate an allegation of sexual abuse.

### F. MONITORING STAFF AFTER AN INVESTIGATION

Whenever staff members return to duty after an investigation in which they were alleged to have sexually abused an inmate, whether or not formal discipline has been pursued/imposed, DOCCS shall review the supervision of such staff when they return to duty, and periodically thereafter as warranted.

### G. DISCIPLINE OF STAFF

1. The DOCCS Bureau of Labor Relations ("BLR") shall consult with the DOCCS Office of Special Investigations ("OSI") regarding investigations into sexual abuse of inmates by staff. BLR will pursue appropriate disciplinary action against such staff. In any case in which OSI has substantiated allegations against a staff member but disciplinary charges are not pursued, BLR will record reasons for its decision.

2. DOCCS will continue to exert efforts to have an attorney participate, on the Department's behalf, in arbitration hearings involving an allegation of staff sexual abuse.

3. DOCCS will continue to exert efforts to introduce credible evidence of prior sexual misconduct, which tends to establish patterns of wrongful conduct or absence of mistake/accident, against staff members charged with sexual abuse at BLR hearings.

4. The standard of proof at a BLR hearing concerning an allegation of sexual abuse shall be preponderance of the evidence.

### H. DOCUMENT PRODUCTIONS, TOURS, AND MEETINGS

1. During the eighteen-month duration of this Settlement Agreement, DOCCS will provide Plaintiffs' counsel with a copy of the closing reports from certain OSI Sex Crimes

Division case files, redacted as appropriate for personally identifiable information or a compelling security need, pursuant to the following schedule and terms:

a. Five months from the Effective Date, DOCCS will provide to Plaintiffs' counsel copies of nine (9) closing reports relating to investigations of incidents at one of the Women's Facilities in which a staff member is alleged to have sexually abused a female inmate. The production will consist of the three reports arising out of each Women's Facility that most recently reached a substantial investigative conclusion prior to one month before production, except that there should be at least one "substantiated" and one "unsubstantiated" report from each Women's Facility where feasible. A "substantial investigative conclusion" occurs when the OSI determines whether the allegations being investigated will be substantiated, unsubstantiated, or unfounded, whether or not the investigation is then formally closed.

b. Fifteen months from the Effective Date, DOCCS will provide to Plaintiffs' counsel copies of nine (9) closing reports relating to investigations of incidents at one of the Women's Facilities in which a staff member is alleged to have sexually abused a female inmate. The production will consist of the three reports arising out of each Women's Facility that most recently reached a substantial investigative conclusion prior to one month before production, except that there should be at least one "substantiated" and one "unsubstantiated" report from each Women's Facility where feasible.

c. During the eighteen month duration of this Settlement Agreement, Plaintiffs' counsel may request two (2) additional closing reports of Plaintiffs' counsels' choosing relating to investigations of incidents at a Women's Facility in which a staff member is alleged to have sexually abused a female inmate. DOCCS will provide up to two (2) such requested reports when a substantial investigative conclusion has been reached. Plaintiffs' counsel agrees that neither they nor any consultant whom they affiliated with in connection with the Settlement Agreement will represent or assist any inmate who is alleged to have been a victim in a requested report in any litigation concerning the incident being investigated, and will not share with the alleged victim or any legal counsel or other person assisting the alleged victim the confidential documents or information provided pursuant to this Settlement Agreement.

d. The production of each OSI closing report pursuant to paragraphs a-c set forth above shall also include the following:

   i. Sexual Abuse Incident Review forms (SAIRs) prepared in connection with the investigation (appropriately redacted as necessary for privilege or personally identifiable information or compelling security needs.) It is understood that these documents are extremely confidential, and it is DOCCS position that they are covered by the deliberative process privilege. The limited production set forth herein, which may be used only

for purpose of this litigation relating to plaintiffs' counsel's need to monitor compliance with the Settlement Agreement, shall not constitute a waiver of privilege or confidentiality over the materials produced, or any similar SAIRs, in any other context.

ii. Sexual Abuse Incident Review Information forms (SAIRIs) prepared in connection with the investigation (appropriately redacted as necessary for privilege or personally identifiable information or compelling security needs.) It is understood that these documents are extremely confidential, and it is DOCCS position that they are covered by the deliberative process privilege. The limited production set forth herein, which may be used only for purpose of this litigation relating to plaintiffs' counsel's need to monitor compliance with the Settlement Agreement, shall not constitute a waiver of privilege or confidentiality over the materials produced, or any similar SAIRIs, in any other context.

iii. A document or statement setting forth what action, if any, and the reasons for such action, the DOCCS BLR has taken prior to the date of production in regard to the incident that was investigated in connection with each OSI closing report produced.

e. In the event Defendants fail to timely produce OSI closing reports and related documents as set forth either in Section H.1.a., or in Section H.1.b., Defendants shall be required to produce an additional OSI closing report and related documents as requested by Plaintiffs' counsel, as set forth in Section H.1.c., above. In the event Defendants fail timely to produce OSI closing reports and related documents as set forth in both Section H.1.a. and Section H.1.b. Defendants will produce a total of three additional OSI closing reports and related documents as requested by Plaintiffs' counsel, as set forth in Section H.1.c., above.

2. During the eighteen month duration of this Settlement Agreement, DOCCS has or will provide for Plaintiffs' counsel review a one-time production of copies of the training materials for Lieutenants and Sergeants used initially in 2020 concerning the prevention of sexual abuse.

3. During the eighteen month duration of this Settlement Agreement, DOCCS has or will provide for Plaintiffs' counsel review a one-time production of a copy of the highly-confidential DOCCS Directive concerning the use of body cameras.

4. During the eighteen month duration of this Settlement Agreement, DOCCS will make best efforts to document when staff at a Women's Facility have been subject to enhanced supervision in connection with a sexual abuse investigation. If any such documents exist, DOCCS will endeavor to produce up to five (5) documents reflecting such information, appropriately redacted as necessary.

5. During the eighteen month duration of this Settlement Agreement, Plaintiffs' counsel will be allowed to visit and tour selected Women's Facilities on mutually agreed-upon dates, not to exceed one visit at each Facility. Plaintiffs' counsel may be accompanied by consultants who have been identified to, and cleared by, DOCCS. During such visits, subject to considerations of safety and security, Plaintiffs' counsel may be permitted to speak with inmates and selected staff upon approval by DOCCS. Information obtained during such conversations will be subject to the confidentiality agreement set forth in Paragraph I. During such visits, Plaintiffs' counsel may view logbooks, and may take notes, including notes of places where they believe cameras should be located. Plaintiffs' counsel may not, however, record in any way the actual locations of cameras, or the location or operation of control gates or their locking mechanisms, in any Women's Facility. Plaintiffs' counsel agrees that the visits set forth in this paragraph shall not be used to obtain information for use in other litigation. It is understood that if either Plaintiffs' counsel or any consultant that they affiliated with in connection with this Settlement Agreement makes any attempt to use any information so obtained in connection with any other litigation, all DOCCS' obligations to provide documents or information pursuant to this Settlement Agreement shall immediately terminate.

6. During the eighteen month duration of this Settlement Agreement, Plaintiffs' counsel; Defendants' counsel, accompanied by consultants if they choose; and Defendants, with the exception of the Commissioner or Acting Commissioner, shall meet at mutually agreed-upon intervals to discuss DOCCS' ongoing efforts to prevent and investigate staff sexual abuse. The parties may agree to conduct these meetings in person, or by video or telephone conference. It is not contemplated that such formal meetings will occur more than four times during the period of the Settlement Agreement, and, at a minimum, shall occur at least once every nine months during the eighteen month duration of this Settlement Agreement. Prior to such meetings, Plaintiffs' counsel may provide a list of topics they would like to discuss at the meetings, as well as a list of additional materials that they believe would facilitate discussions. DOCCS may, but is not required to, bring those materials to the meetings. DOCCS also agrees to make best efforts to respond to questions raised by counsel before and during these meetings.

## I. CONFIDENTIALITY

DOCCS may designate any documents produced or information provided pursuant to this Settlement Agreement as "Highly Confidential-Attorney's Eyes Only." Such information may be designated "Highly Confidential-Attorney's Eyes Only" if it includes: (a) highly sensitive information, policies, procedures, or other matters that, if disclosed, could jeopardize correctional or institutional safety, investigations, security, or good order, or (b) information that is confidential under state or federal law or whose disclosure could constitute an invasion of a non-party's personal privacy. "Highly Confidential-Attorney's Eyes Only" information may only be shared with or reviewed by counsel for the Parties, and their designated experts or consultants if they first agree to maintain the confidentiality of that information by signing Exhibit B to the Stipulation. Upon termination of this Settlement Agreement, any such materials in written or other physical form shall be returned to DOCCS, or destroyed upon agreement of the Parties. The terms set forth in this paragraph shall apply to all materials produced and confidential

information shared pursuant to and prior to or during the term of this Settlement Agreement, or pursuant to and prior to or during the prior Agreement in this Action. It is understood that if Plaintiffs' counsel materially breaches the terms set forth in this paragraph, all DOCCS' obligations to provide documents or information pursuant to this Settlement Agreement shall immediately terminate. The confidentiality provisions set forth in this paragraph shall survive the expiration of this eighteen month Settlement Agreement.

[CONTINUED ON NEXT PAGE]

J.  **ENFORCEMENT**

During the first nine (9) months of this Settlement Agreement, Plaintiffs' sole remedy for any alleged non-compliance with any term of this Settlement Agreement shall be the motion for an order lifting the Monitored Stay and returning the Action to the Court's active calendar, as set forth in paragraph 4 of the Stipulation. After the dismissal of the Action, the Parties' sole remedy for any alleged non-compliance with any term of this Settlement Agreement shall be an action on the settlement contract in New York state court. The terms of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York.

Dated: New York, New York
April 14, 2020

| | |
|---|---|
| Debevoise & Plimpton LLP<br>The Legal Aid Society<br>Prisoner's Rights Project<br><br>*Attorneys for Plaintiffs*<br><br>By: _____<br>Maeve L. O'Connor<br>Kathryn C. Saba<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY 10022<br>(212) 909-6950<br><br>Dori A. Lewis<br>Veronica Vela<br>The Legal Aid Society<br>Prisoners' Rights Project<br>199 Water Street<br>New York, NY 10038<br>(212) 577-3530 | Letitia James<br>Attorney General<br>State of New York<br><br>*Attorney for Defendants*<br><br>By: _____<br>Daniel A. Schulze<br>Colleen K. Faherty<br>Julinda Dawkins<br>28 Liberty Street<br>New York, NY 10005<br>(212) 416-6557 |